King, J.
(orally.)
The petition in this case was filed March 31, 1893, in the Court of Common Pleas of Lucas county, and after a trial and judgment in that court, was appealed to this court, and has been tried here.
The petition sets forth that in December, 1852, the defendant, Peter H. Shaw, and his wife, Clarissa, agreed with John Poag, the father of the plaintiffs, to sell and convey, by a good and sufficient deed, all of that part of lot No. 1,010, in the Vistula division of Toledo, which lies northeast of a line drawn from a point in the front line of said lot on Summit street, forty-four feet distant from the south corner of said lot, and thence running in-a direct line to a point in the line of said lot on St. Clair street forty-four feet distant from the west corner of said lot, “the premises hereby conveyed being all that part of said lot which lies northeasterly of the said line, ’ ’. at and for the sum of $4,000, to be paid by said John Poag, and that in fulfillment of this agreement, Peter H. Shaw, and his wife, on December 28, 1852, executed and delivered to said Poag their deed, whereby they intended and attempted to convey full and complete title in fee-simple to said lot; and said Poag, supposing that they had done so, paid the consideration. That at the time of said conveyance the title of said property was in Clarissa Shaw, which fact was unknown to Poag, and that, by the mistake of Peter H. Shaw and Clarissa Shaw and of the per *450 son who drew up the deed, the name of Clarissa Shaw was omitted in the granting part of the said deed and her name inserted only in the clause wherein she released her right of dower in said premises.
That in 1873, Clarissa Shaw died and left a will, whereby she devised all her property to her husband and to her children, who are the defendants. That the plaintiffs, in January, 1893, discovered for the first time the mistake in said deed and called upon the defendants to correct it, which they have refused to do, except the defendant, Caroline D. Plessner, who executed a deed of her interest therein, and the court is asked to order and decree that the same be corrected.
An answer was filed, in which the execution of the deed as described in the petition is admitted; also the fact that Peter H. Shaw and Clarissa Shaw were husband and wife; that in May, 1873, the said Clarissa Shaw died; that she willed all her property to her husband and children, which are described, and denying all other allegations in the petition.
It appears by the record of the deed in question, that on the 28th day of December, 1852, before Ira L. Clark, a justice of the peace in and for this county, P. H. Shaw, being the Peter H. Shaw named in the petition, and Clarissa Shaw, appeared before the said justice, who certifies that they are grantors in said conveyance, and that they acknowledged this deed to be their voluntary act and deed, and that Clarissa Shaw, wife of said Peter H. Shaw, being by the said justice examined separate and apart from her husband, the contents of the deed being make known and explained to her, declared that she voluntarily signed and sealed and acknowledged the same and was fully satisfied therewith.
The deed in question reads, in the granting clause, that Peter H. Shaw, in consideration of $4,000 in hand paid by John Poag, does give, grant, bargain, sell and confirm unto John Poag the lands and tenements described in the petition. *451 Further, that he, said Peter H. Shaw, is lawfully seized of the above granted premises and hath the right to sell and convey the same, with the appurtenances, to the said grantee; that the same is free from all incumbrances whatsoever; that he will warrant and defend the same, with the appurtenances, to the said grantee, his heirs and assigns, and further contains this clause: “And I, Clarissa, wife of said Peter H. Shaw, for the consideration of $1 to- her in hand paid by the said grantee, doth hereby release and forever quit-claim to the said grantee all her right and title andjn. terest in and to the said described premises by the way of dower and otherwise. In testimony, we have hereunto set our hands and seals this 28th day of December, A. D. 1852.
“Peter H. Shaw,
“Clarissa Shaw.”
In addition to the facts appearing upon the face of this record, it may be stated, on the testimony of Robert Bell, that on the evening of the 27th day of December, 1852, Mr. Bell, in company with John Poag, went to the residence of Peter H. Shaw in Toledo, in a carriage. That Mr. Bell alighted from the carriage in front of the entrance to the residence of ■ Mr. Shaw, rang the bell — or knocked- — and found that Mr. Shaw had retired forThepiight; but being awakened, he came to the front window over the door, raised the window, and inquired what was wanted. '!. He was told that Mr. Poag was in a carriage at the door and Alesired to see him on business-. The witness testifies that there was some conversation between Mr. Shaw and a woman — as appeared by the voice — in the room upstairs, but who the woman was he did not know. A few minutes elapsed and Mr. Shaw came down and came to the curb-stone in front of the house, and at that time Mr. Shaw entered into a contract with Poag to sell this particular piece of land, Mr. Shaw saying that he did not want to sell it, buHie'was involved as indorser for sundry people, and was_ going to have to pay *452 some of these debts and he was forced to raise some money, and therefore he desired to get rid of the property, which according to the evidence, was not then improved. Mr. Poag offered him $4,000; $3,000 in cash, and the balance to be secured by a mortgage on the premises, and placed in two notes due in one and two years from the date thereof. This was satisfactory, and Mr. Shaw agreed to have conveyance made the next day, either by Morrison R. Waite, or that he would submit it to Mr. Waite, who was Mr. Poag’s attorney; and Mr. Poag informed him that if they were satisfactory to Mr. Waite, the money would be obtained of Mr. Bell, who would act for him in that respect, as Mr. Poag resided in the city of New York. The following day, as appears by the deed, it was executed by Mr. Shaw and wife. Some days later, and in the city of New York, Mr. Poag- and his wife executed a mortgage to Peter H. Shaw upon these premises, securing the payment of the $1,000 deferred payments placed iii two notes, which were payable to Peter H. Shaw. The mortgage record shows that the last of these was paid on December 29, 1854, by a receipt signed by Peter H. Shaw, and a direction to the recorder to cancel the mortgage of record, which was done.
Certain other facts are shown by the record of deeds: That July 13, 1839, Benjamin F. Stickney and wife conveyed to Peter H. Shaw, for $2,840, the whole of lot No. 1,010; that October 28, 1839, Peter H. Shaw and wife, Clarissa, conveyed to Erastus Wilkinson the whole of lot No. 1010 as well as a part of lots 615 and 616, being two-thirds thereof, for the expressed consideration of $8,200,the grantee named being a brother of Clarissa Shaw; that on February 24, 1847, Erastus Wilkinson and his wife conveyed to Isaac Wilkinson, his father, of Nankin, Wayne county, Michigan, for an expressed consideration of $3,900, lot 1019 and a portion of lots 615 and 616, who the same year and for the same expressed consideration, viz: $3,900,convoyed the same *453 premises to Clarissa Shaw, who thereafter retained the title, and has never' — unless by the deed to John Poag — conveyed the same to any one.
These prior conveyances are thus stated that the course of the title of this property previous to the conveyance in question, may be traced, and are not regarded by us as throwing a great deal of light on the transaction, except as to the considerations named in these deeds. If they are entitled to any weight whatever, they would indicate that in 1847, the whole of this lot — which included forty-four feet more of front on Summit street than is included in the deed to. John Poag — and portions of two other lots, situated somewhere else in the city, were conveyed for the consideration of $3,900; and that is distinctly expressed in two deeds bearing date the same year, to-wit, 1847. The evidence in the case further shows that after the purchase by John Poag of this part of lot 1010, which was fifty-six feet in length of front on Summit street, within three or four years thereafter, he erected upon it, or caused to be erected upon it, a building, which is now standing thereon. This was either erected by John Poag himself or by tenants of his under a lease permitting them to erect the same, and is now a part of the property in question; and that ever since the erection of said building John Poag and his heirs have managed and controlled this property, collected and received all the rents and income therefrom; that Mrs. Shaw lived until 1873, and her husband until 1895, about three months before the trial of this case in this court.
The case was tried in the common pleas a year before the death of Mr. Shaw, and he did not appear as a witness to testify in that case, although it appears in evidence that he was able to be upon the street. Whether his mental condition was such as not to permit him to .be a witness, is not clear. There is no evidence in the case that either Mr. Shaw or Mrs. Shaw ever made any expression denying the *454 title of the plaintiffs or their ancestors to this property, or made any expression claiming a title to it themselves.
Is this evidence sufficient to authorize the court to say that there was a mistake in this deed' — -that it was the intention of Clarissa Shaw to convey her title and not release her dower, and that the deed should be corrected to conform to that intention ?
If the title to this property stood, as it.did stand, in Clarissa Shaw, she had no dower interest, and could not release any. The husband could, however, convey his right and interest, which, under the law of Ohio, was a tenancy by the curtesy, but, under the statutes of Ohio then in force, he could only convey that in the manner prescribed by the existing statute, which may be found in S. & C., page 416* but which required that the same should be signed, sealed and acknowledged as therein prescribed.
This deed does nor purport to convey the courtesy estate of the husband, but is made in the form, and would be a sufficient and proper conveyance of the property if the title stood in him.
By the act of February 28, 1846, all conveyances of the husband’s interest in the real estate of his wife are void during the life of the wife and the life of the heirs of her body, unless an instrument for the conveyance of such real estate is executed, attested and acknowledged according to the laws of Ohio for the conveyance and incumbrance of the estate of the wife, which latter is the one previously cited, and under that statute it was held, that an attempt of the husband to lease his wife’s property by mere lease from year to year, was invalid unless executed as prescribed by the laws of Ohio and in accordance with the provisions of the statute.
The act remained in force until April, 1861, when it was repealed by the act found in .vol. 58, page 54, Ohio Laws, which provided as follows:
“Any estate or interest, legal or equitable, in real prop *455 erty belonging to any woman at her marriage, or which may have come to her during coverture by conveyance, gift, devise, or inheritance, or by purchase with her separate money or means, shall, together with all rents and issues thereof, be and remain her separate property, and under her sole control; aand she may in her own name during coverture, lease the same for any period not exceeding three years. This act shall not affect the estate by the curtesy of any husband in the real property of his wife after her decease; but during the life of such wife, or any heir of her body, such estate shall not be taken by any process of law for the payment of his debts, or be conveyed or encumbered by him, unless she shall join therein with him in the manner prescribed by law in regard to her own estate.”
Under the act of 1846, it was held that an attempt of the husband to lease his wife’s real estate would be invalid unless it were executed as provided under said statute, so that it seems clear that this deed was invalid to convey any interest in this property in the way that the property at that time stood. It did not convey her dower interest, because she had none; it did not convey the husband’s curtesy, because it was not executed, attested and acknowledged in accordance with the statute relating to this subject,' and hence, in fact, conveyed no title..
But the parties intended to convey something. That seems clear. John Poag paid what the proof shows was the full value of this property — $4,000. It is said by the witnesses that the price was regarded as a good price. He received a convyanece so written as to be wholly inoperative in conveying any interest in the property whatever.
The statute under which this action is brought is section 5872, originally adopted in 1857, and the authority for which is contained in section 28, article 2, of the constitution of the state of Ohio, adopted in 1852:
“The courts of common pleas and superior courts may correct, amend, and relieve against,any errors, defects or mistakes occurring in the deed or other conveyance of a hus *456 band and wife, executed and intended to convey or incumber the lands or estate of the wife, or her right of dower in the lands of her husband, in the same manner and to the same extent as such courts are or may be authorized or empowered to correct errors, mistakes or defects in the deeds or conveyances of any other persons.”
Under this section a number of cases have been decided, the two most important of which are those of Groshorn v. Purcell, 10 Ohio St. 641, and Smith v. Turpin, 20 Ohio St. 478. Referring to these cases, we find the court held that this statute authorizes precisely the relief asked for in the case before us, and in somewhat similar circumstances, to-wit: the execution of a conveyance in which the title to the property stood in the name of the wife, but in which conveyance the name of the husband appeared only in the granting clause, the wife having, as in the case before us, released her dower, and by the word “otherwise,” her further interest in the property, and had signed, attested. and duly acknowledged the instruments.
And the court, in the case of Smith v. Turpin, has, in passing upon the evidence, put little reliance upon the oral testimony, referring principally to that which appears from the deed itself:
“That the husband sold and agreed and intended to convey the entire premises; that he received a full consideration therefor, and that the grantees had been allowed for a long period of time to remain in undisturbed possession.
“These facts themselves go far towards proving that the wife intended more than the release of her dower right in her husband’s moiety of the property. Added to these pregnant facts is to be considered also what appears upon the face of the deed itself, and in connection therewith what appears upon the face of the other deed excuted at the same time.
“In the deed in controversy, sweeping and unmistakable words for the conveyance of the entire premises are used. Is it at all probable in the latter case, that what the par *457 ties really meant was to convey to Wiley and wife merely the husband’s fee in the undivided half of the premises free from dower, and the husband’s inchoate estate of curtesy in the wife’s half? Such seems to be the legal effect of the deed; but it seems to us morally certain that such was not the intention of the parties. The truth of the matter evidently is, that the same mistake was made as that relieved against in the case of Goshorn v. Purcell.”
I may say that it seems to us morally certain that the parties, Mr. and Mrs. Shaw, did not intend that their deed should be void and of no effect, and certainly Mr. Poag did not suppose he was paying his money for a void or ineffectual conveyance. He paid for the whole of the land. The wife, by her signature and acknowledgment, has said that she releases in that land all her interest by way of doioer or otherwise.
By the act of 1801, to which reference is made, the wife could lease her property for a period of not more than three years, and had the right to control the property, and its use, and its rents, and the profits thereof exclusively in her own name without any interference on the part of her husband; these were placed beyond his reach by that act, and yet from 1861 until 1873, the time of her death,- she made no claim to or against it. As said in 36 Ohio St. 54:
“The real question is, did the party intend to convey? If he did, and made a mistake which defeated that intention, it may be cured, whatever its form and character, if justice and equity demands it.”
It is said here that there is some evideuce indicating that this deed was prepared, or examined and inspected, by a distinguished lawyer. The evidence does not make good this claim. It amounts to this, that either Mr. Waite was to draw this deed, or he was to examine it after it was drawn. The evidence shows that it was executed before a justice of the peace, who resided in this city at that time. There is no evidence that Mr. *458 Waite ever saw this conveyance, or, if he did, that it had not been prepared and signed before he saw it. If he saw it and knew the situation of the title, nobody jrould be presumptuous enough to say that he would have allowed his client to receive it.
Would not the court be doing violence to the conclusions which must be drawn from this deed and these facts, to say that these parties did not intend to convey this property ? We think so. We think this case fully as strong as those referred to, and in addition to this, it may be said that a case in the 24th Bulletin, 348, shows the reversal of the circuit court by the Supreme Court, without any official report, in a case where the wife owning and having title to forty acres of land, had signed a mortgage releasing her dower, her husband having given the mortgage to secure his own debt, and the circuit court haing found that she did not intend to mortgage her own land, yet the Supreme Court reversed it.
These seem to us ample authorities for holding that the intention of Peter H. Shaw and Clarissa Shaw was to convey this property to John Poag, and which intention was rendered invalid by the mistake of the person who drew the deed, by omitting the name of Clarissa Shaw from the granting clause of the deed.
It is suggested that this action is barred by the statute of limitations, and an ingenious argument is made, based on the decision in 48 Ohio St. 195. We hardly think it applies to the case before us.
Section 4974 of the Revised Statutes provides that the chapter prescribing the time in which actions shall be commenced, shall not apply, among other cases, “to an action by a vendee of real property, in possession thereof, to obtain a conveyance of it.” Without entering into any argument to show that an action like this comes within that exception, we think, by analogy, it does. This action *459 is by a vendee of real property, in possession thereof, to obtain a correction of the conveyance under which said grantee claims title, and we think it is within that exception.
“It has been said,with regard to the statute of limitations, by the Supreme Court in the case of Ormsby v. Longworth, 11 Ohio St. 668:
“And in cases like this, where the correcting of the mistake disturbs no possession, and interferes with no investment in the way of improvements or the like, made on the faith of the mistaken instrument, we cannot see why, as a matter of principle, the same rule should not apply to cases of mistake. Mistake is as much a secret thing’ as fraud is; and for the party benefited by the fraud or mistake to set up the lapse of time against a case arising from either, until after the discovery of the fraud or mistake, is alike unconscionable in either case. And that the same rule does apply in the one case as in the other, was distinctly held by the English Court of Exchequer, sitting in equity,in Brookshank v. Smith, 2 Young & Collyer’s R. 58. In that case, certain stocks had, by mistake, been transferred by trustees to a party not entitled to them; the time fixed-by the statute of limitations for the commencement of an action at láw in analogous cases, having expired after the mistake, but not after its discovery. And the same doctrine is asserted by Judge Story, 2 Story’s Equity, section 1521a. And, moreover, it must be borne in mind that the plaintiffs have all along been, and still are, in possession, claiming a fee-simple estate of the premises intended to be conveyed by the instrument sought to be corrected. And lapse of time does not operate against the holder of a legal title in possession, filing his bill to extinguish an adversary claim, to the extent that 'it does against a complainant filing ,a bill demanding a surrender of the legal title and possession from the holder of them.”
We do not think that the case in 48 Ohio St. is authority sustaining the argument that this action is barred by the statute of limitations. For myself, I would say that were it not for the holding in that case, I should be of opinion that this would also fall under the other exception of the *460 statute relating to tbe discovery of fraud —that such an action may be brought within four years after the discovery of the fraud; but the Supreme Court seem to have said, very emphatically, in 48 Ohio St., that it only applied to cases of fraud as such, and not to cases of mistake. Our holding and judgment is, therefore, that there should be a decree in this case upon for the plaintiffs, for and in accordance with the prayer of that petition; that this deed be corrected to conform to the intention of the parties as -set forth in the petition, and that the plaintiffs recover of the defendant their costs.
E. T. Waite and J. H. Tucker, for plaintiffs.
Jas. M. Brown & Son, for defendants.